UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| RICK JAMES FREDERICKS, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:12-cv-1234 |
| ) | |
| v. ) | Honorable Janet T. Neff |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On October 5, 2009, plaintiff filed his applications for benefits alleging an April 23, 2008 onset of disability.[1]  (A.R. 168-81).  Plaintiff's disability insured status expired on March 31, 2010.  Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before March 31, 2010.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims were denied on initial review.  On April 22, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 68-102).  On May 6, 2011, the ALJ issued his decision finding that plaintiff was not disabled. (A.R.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, November 2009 is plaintiff's earliest possible entitlement to SSI benefits.

52-62). On September 13, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1. The ALJ failed to follow the treating physician rule;

2. The ALJ "failed to properly evaluate" plaintiff's credibility; and

3. The ALJ "relied on flawed vocational expert testimony."

(Plf. Brief at 11, 16, 19, docket # 13). I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 23, 2008, through March 31, 2010, but not thereafter. (A.R. 54). Plaintiff had not engaged in substantial gainful activity on or after April 23, 2008. (A.R. 54). Plaintiff had the following severe impairments: "degenerative disc disease post multiple surgeries, diabetes mellitus, coronary artery disease post coronary bypass surgery, ischemic cardiomyopathy New York

Heart Association Class I, hypertension, obesity, and asthma." (A.R. 54). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 54). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to lifting 10 pounds frequently and 20 pounds occasionally. He can stand and/or walk 2 hours of an 8-hour day and sit 6 hours of an 8-hour day. He requires a sit/stand option. The claimant can occasionally perform postural activities[2] but not use ladders, ropes, or scaffolds, and only occasional use of leg controls. The claimant should have no concentrated exposure to extreme temperature, humidity, vibration, hazards, or lung irritants. Secondary pain and medication side effects, the claimant should have a limitation to simple repetitive tasks.

(A.R. 55). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 55-60). Plaintiff could not perform any past relevant work. (A.R. 60). Plaintiff was 49-years-old as of the date of his alleged onset of disability, 50-years old on the date he filed his application for SSI benefits, 51-years-old when his disability insured status expired, and 52-years-old on the date of the ALJ's decision. The ALJ classified plaintiff as an "individual closely approaching advanced age."[3] (A.R. 60). Plaintiff has at least a high-school education and is able to communicate

---

[2]The ALJ did not provide a clear explanation regarding what "postural activities" he was referring to. It is assumed for present purposes that the ALJ was referring to "postural limitations" listed on page 3 of the RFC questionnaire completed by State Agency physician Shahida Mohiuddin. (A.R. 578). The ALJ stated that he was giving this RFC assessment "significant weight." (A.R. 60). Dr. Mohiuddin offered his opinion that plaintiff could "occasionally" climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (A.R. 578). Mohiuddin did not provide any opinion addressing plaintiff's ability to bend. (*see* A.R. 576-83).

[3]Plaintiff was a "younger individual" through January 26, 2009. The ALJ gave plaintiff the benefit of the higher age classification at all times relevant to his claims for DIB and SSI benefits. (A.R. 60). The ALJ did not conduct a separate analysis regarding the nine-month period plaintiff was classified as a younger individual. In similar fashion, the ALJ lumped together plaintiff's claim for SSI benefits with his claim for DIB benefits without undertaking a separate analysis on the latter

in English. (A.R. 60). The ALJ found that the jobs skills that plaintiff possessed were not transferable to light work. (A.R. 60). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE testified that there were approximately 6,000 jobs in Michigan that the hypothetical person would be capable of performing.[4] (A.R. 91-93). The ALJ found that this constituted a significant number of jobs. Using Rule 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 61).

1.

Plaintiff argues that the ALJ failed to follow the treating physician rule regarding the weight he gave to the opinions found in the RFC questionnaires completed by Vincent Prusick, M.D., plaintiff's treating orthopedic surgeon, and Geoffrey Turner, M.D., plaintiff's primary care physician. (Plf. Brief at 11-16; Reply Brief at 1). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of

---

claim based on plaintiff's condition as of his date last disability insured.

[4]The ALJ's opinion lists 8,000 jobs (A.R. 61), but the correct figure is 6,000. The higher figure fails to take into account the reduction in the number of inspector jobs stemming from the VE's testimony in response to the ALJ's second hypothetical question. The second hypothetical question added the sit/stand option and other restrictions which later appeared in the ALJ's factual finding regarding plaintiff's RFC. (A.R. 55, 91-93).

disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[5] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

---

[5]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff claimed an April 23, 2008 onset of disability. A month before his alleged onset of disability, plaintiff appeared at the hospital complaining of back pain and pain radiating down his right leg. The CT scan of plaintiff's spine revealed degenerative changes at L5-S1 with a bulging disc that appeared to be causing some nerve impingement. (A.R. 476). Plaintiff's MRI dated July 9, 2008, showed a "[s]mall right paracentral disc protrusion at the L5-S1 level similar to

the CT study." On July 17, 2008, Vincent Prusick, M.D., plaintiff's treating orthopedic surgeon, performed a L5-S1 microdiscectomy. (A.R. 274-82, 451-52, 522-23). A post-operative MRI showed evidence of a recurrent disc herniation. (A.R. 272-73). On August 5, 2008, Dr. Prusick performed a repeat of the L5-S1 microdiscectomy procedure. (A.R. 262-69, 435-41).

On September 30, 2008, plaintiff suffered an acute myocardial infarction and was hospitalized at Munson Medical Center. (A.R. 427). Plaintiff was described as a "49 year old male severely non-compliant, hypertension, diabetic patient[.]" (A.R. 303). Daniel Bonifacio, M.D., Dino Recchia, M.D., and R. Glade Smith were plaintiff's treating cardiologists. Dr. Recchia was the admitting physician. (A.R. 298). On September 30, 2008, Dr. Bonifacio performed a left ventriculography and selective coronary angiography, which was followed a few days later by the quadruple coronary artery bypass surgery performed by Dr. Smith. Plaintiff was discharged from the hospital on October 8, 2008. (A.R. 292-307, 548-49). On June 11, 2009, plaintiff returned to Dr. Recchia for an evaluation to determine whether his cardiac condition would permit a third lower back surgery procedure then under consideration. Dr. Recchia concluded as follows: "I believe it is reasonable to proceed with the planned spinal surgery as advocated by Dr. Prusick. Rick will be at a modestly increased risk of perioperative cardiac complication due to his severe ischemic cardiomyopathy. The fact that he has no ischemia on his Thallium scan is encouraging and I do not think he needs any further preoperative cardiac evaluation before proceeding." (A.R. 345). Plaintiff's treating cardiologists did not offer any opinion that plaintiff's heart condition would prevent him from performing a limited range of light work.

On June 23, 2009, plaintiff underwent a third back surgery performed by Dr. Prusick. He performed a "[d]ecompressive lumbar laminectomy of L5 with partial facetectomy and

foraminotomies along with right-sided L5-S1 diskectomy with bilateral posterior fusion of L5-S1 with EBI Polaris rods, iliac crest graft, local bone graft, and ProOsteon 500 R bone graft substitute with marrow aspirate." (A.R. 327, *see* A.R. 333-35). Plaintiff had spinal stenosis with recurrent disc herniation at L5-S1. (A.R. 333). Plaintiff had elected to undergo the third surgical intervention by Dr. Prusick "after all conservative measures of controlling pain had failed." (A.R. 327; *see* A.R. 404). Plaintiff was discharged from the hospital on June 25, 2009. The following restrictions appear in the discharge summary: "Physical activity per written spinal pathway instructions with ambulation as tolerated. No bending, stooping, twisting, lifting over 10 pounds, or bearing down." (A.R. 328, 375).

On February 6, 2010, Michael Simpson, M.D., performed a consultative examination. He found that plaintiff had a limited range of motion in his lumbar spine and normal motor strength and function. (A.R. 572-75).

On March 10, 2011, a state agency physician, Shahida Mohiuddin, M.D., reviewed plaintiff's medical records and offered a "current evaluation" of plaintiff's RFC. (A.R. 576-83). Mohiuddin indicated that as of March 10, 2011, plaintiff was capable of performing a range of light work. With regard to "postural limitations," Dr. Mohiuddin offered his opinion that plaintiff should never climb ladders, ropes or scaffolds, but could "occasionally" climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (A.R. 578). He did not provide any opinion addressing plaintiff's ability to bend. (*see* A.R. 576-83).

    A.    <u>Dr. Prusick</u>

On April 6, 2011, Dr. Prusick completed a RFC questionnaire. (A.R. 772-75). Dr. Prusick's responses generally support the ALJ's factual finding that plaintiff was capable of

performing a limited range of light work. Nonetheless, the fatal flaw in the ALJ's opinion is the ALJ's rejection of the treating surgeon's postural limitation precluding work requiring plaintiff to bend. This limitation is well supported by the objective evidence generated in connection with plaintiff's three lower back surgeries. The ALJ never directly addressed the postural limitation on bending. Instead, he chose to focus exclusively on Dr. Prusick's proffered restriction on stooping:

> Dr. Prusick completed a lumbar spine impairment questionnaire on April 6, 2010 and offered a "fair" prognosis and a diagnosis of chronic lumbar pain syndrome, recurrent disc herniation and fusion at L5-S1. Clinically speaking, Dr. Prusick reported the claimant's range of motion limited by 50% due to tenderness at L5-S1 level and persistent low back pain. Dr. Prusick opined the claimant was limited to sitting 4 hours of an 8-hour day, and standing/walking 3 hours out of an 8-hour day. He could occasionally lift 5 to 20 pounds, and frequently lift 0-5 pounds, but never kneel, bend, or stoop. The opinion that the claimant has a limitation with performing light exertion work is consistent with the evidence and given some weight by the undersigned to the extent that the claimant is capable of performing light work within the limitations found herein. However, the opinion that the claimant is unable to stoop, and is limited to sitting 4 hours, and standing/walking 3 hours of an 8-hour day is without substantial support from other evidence of record, which renders it less persuasive. This opinion is quite conclusory and provides little explanation of the evidence relied on in forming that opinion and is given little weight. Considered as a whole, ongoing treatment records do not reflect sustained symptoms or concomitant pathology consistent with all the limitations opined by Dr. Prusick, although the undersigned agrees that the evidence supports a range of light work.

(A.R. 58). The ALJ did not comply with the requirements of the treating physician rule when, without analysis, he rejected Dr. Prusick's opinion that plaintiff's lower back impairment (which had already required three surgical corrections) precluded work which required him to bend. *See Cole v. Astrue*, 661 F.3d at 937-38.

Because the ALJ elected to ignore rather than engage the proffered limitation on bending, it is unclear as to the extent he relied on Dr. Mohiuddin's RFC assessment. Mohiuddin, a non-treating and non-examining physician, performed a "current evaluation" of plaintiff's RFC as of March 10, 2011. Dr. Mohiuddin did not purport to evaluate plaintiff's condition at any time

before that date. (A.R. 576). This temporal limitation on the scope of Dr. Mohiuddin's opinion is significant because plaintiff claimed a 2008 onset of disability. (A.R. 54). Further, Mohiuddin gave his opinion on a number of "postural limitations" (A.R. 578), but never addressed the limitation on plaintiff's ability to bend. If Dr. Mohiuddin's RFC assessment was the ALJ's unstated reason for rejecting plaintiff's treating surgeon's well-supported postural limitation on bending, the ALJ compounded his error, requiring reversal under the treating physician rule. *See Gayheart v. Commissioner*, 710 F.3d at 379-80.

    B.    <u>Dr. Turner</u>

On October 19, 2010, Dr. Turner completed a RFC questionnaire. (A.R. 719-26). It is not necessary to explore the specific restrictions Turner suggested. It is sufficient to note that the proposed limitations were more restrictive than the ALJ's factual finding regarding plaintiff's RFC. The ALJ essentially ignored the opinions that plaintiff's primary care physician provided in his 2010 RFC questionnaire responses.[6] The ALJ stated that he had "considered" the "counsel-elicited opinion form[]" and then provided an unexplained conclusion that it was "not supported with respect to any continuous period of not less than 12 months." (A.R. 58). The ALJ's failure to address Dr. Turner's opinions constituted a further violation of the treating physician rule. *See LaRicca v. Commissioner*, 549 F. App'x 377, 386 (6th Cir. 2013); *accord Curler v. Commissioner*, No. 13-1721, __ F. App'x __, 2014 WL 1282521, at * 6 (6th Cir. Apr. 1, 2014) (Because RFC is

---

[6]The ALJ did address restrictions that Dr. Turner suggested in 2009. He noted that in "July 2009, post back surgery, Dr. Turner limited plaintiff to no bending, stooping, twisting, or lifting over 10 pounds." (A.R. 56). The ALJ gave these proposed limitations little weight because they were suggested immediately after plaintiff's back surgery: "this opinion was based on durational limitation following back surgery, and did not consider the improvement of [his] condition over time." (A.R. 57).

among the issues reserved to the Commissioner, the ALJ's decision "need only explain the consideration given to the treating source's opinion.").

Plaintiff asks the court to order the Commissioner to award DIB and SSI benefits. (Plf. Brief at 20; Reply Brief at 2). "[T]he court can reverse the [Commissioner's] decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *See Faucher v. Secretary of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*; *see Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); *see also Brooks v. Commissioner*, 531 F. App'x 636, 644-45 (6th Cir. 2013). Here, the recommendation is to vacate the Commissioner's decision because the ALJ did not comply with the requirements of the treating physician rule, not because the record strongly establishes plaintiff's entitlement to DIB and SSI benefits.

**2.**

Plaintiff argues that the ALJ "failed to properly evaluate" his credibility. (Plf. Brief at 16-19). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial

evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was not fully credible. (A.R. 55-60). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's credibility was further undermined by the absence of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human*

*Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008). It was appropriate for the ALJ to draw an adverse inference from plaintiff's failure to follow medical advice regarding weight loss, checking his glucose levels, and taking the medications prescribed for his hypertension and diabetes mellitus. Social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### 3.

Plaintiff argues that the ALJ relied on flawed vocational expert testimony. (Plf. Brief at 19-20). His argument that the ALJ's hypothetical question "failed to accurately portray his impairments" is a mere reformulation of his attack on the ALJ's factual finding regarding his credibility. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question,

an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations he found to be credible.

**4.**

Plaintiff argues that "the ALJ failed to reconcile a significant conflict between the VE's testimony that [plaintiff] can perform work with a sit/stand option and the *Dictionary of Occupational Titles ("DOT")*, which does not contemplate work with a sit/stand option." (Plf. Brief at 19). "In the Sixth Circuit, the ALJ's duty [under SSR 00-4p] is satisfied if he or she asks the VE whether his or her testimony is consistent with the DOT." *Johnson v. Commissioner*, 535 F. App'x 498, 508 (6th Cir. 2013). The ALJ made the necessary inquiry. (A.R. 94). *See Kyle v. Commissioner*, 609 F.3d 847, 858 (6th Cir. 2010). "The ALJ had no duty under S.S.R. 00-4p to interrogate [the VE] further." *Lindsley v. Commissioner*, 560 F.3d 601, 606 (6th Cir. 2009). In addition, plaintiff's attorney had a "full opportunity" to question the VE. (A.R. 94-101). When the ALJ asked plaintiff's attorney if she was asserting that the VE's testimony conflicted with the DOT, her response was: "I'm not saying it's in conflict necessarily." (A.R. 95-96). Plaintiff's argument based on the alleged conflict between the VE's testimony and the DOT does not provide a basis for disturbing the Commissioner's decision.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be vacated and that the matter be remanded to the Commissioner for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).


Dated:  May 13, 2014                    /s/  Joseph G. Scoville
                                        United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).